UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- X

KENDRA HINDS,

                              Plaintiff,    **COMPLAINT**

              -against-

DANIEL OLIVER; DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION ("DOCCS")           Jury Trial Demanded
ACTING COMMISSIONER ANTHONY ANNUCCI;
CHIEF OF INVESTIGATIONS FOR THE DOCCS
OFFICE OF SPECIAL INVESTIGATIONS, STEVEN
MAHER; DEPUTY CHIEF OF INVESTIGATIONS FOR
THE SEX CRIMES UNIT OF THE DOCCS OFFICE
OF SPECIAL INVESTIGATIONS, CHRISTIAN
NUNEZ; DOCCS DIRECTOR OF THE BUREAU OF
LABOR RELATIONS, JOHN SHIPLEY; DOCCS
ASSOCIATE COMMISSIONER OF THE OFFICE OF
SEXUAL ABUSE PREVENTION AND EDUCATION,
JASON EFFMAN; JOHN/JANE DOES # 1-5; the
individual defendants sued in their
official and individual capacities,

                              Defendants.
------------------------------------------- X

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which plaintiff
seeks relief for the violation of plaintiff's rights secured by
42 U.S.C. §§ 1983 and 1988 and the Fifth, Eighth, and Fourteenth
Amendments to the United States Constitution, and the laws of
the State of New York.  Plaintiff's claims arise from an
incident that arose on or about June 26 through 28, 2015.
During the incident, the defendants, subjected plaintiff to,
among other things, excessive force, failure to intervene,
deliberate indifference, conspiracy, assault, battery,
negligence, cruel and unusual punishment; failure to protect;

intentional and negligent infliction of emotional distress,
negligent hiring, supervision, training, retention, and
instruction of employees, and implementation and continuation of
an unlawful policy, practice, and custom.  Plaintiff seeks
compensatory and punitive damages, declaratory relief, an award
of costs and attorney's fees, pursuant to 42 U.S.C. § 1988, and
such other and further relief as the Court deems just and
proper.

### JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. §
1983, and the Fifth, Eighth, and Fourteenth Amendments to the
United States Constitution.  Jurisdiction is conferred upon this
Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.    Plaintiff invokes the supplemental jurisdiction
of this Court pursuant to 28 U.S.C. § 1367 to hear and decide
claims arising under state law.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391
because some of the acts in question occurred in New York
County, and the defendants are subject to personal jurisdiction
in the Southern District of New York.

5.    Upon Information and belief plaintiff has
exhausted all administrative remedies.

### PARTIES

6.    Plaintiff Kendra Hinds was a resident of the
State of New York, Dutchess County, at the time of the incident,

plaintiff was an inmate at Taconic Correctional Facility a New York State (NYS) Department of Corrections and Community Supervision (DOCCS) Facility.

7.      Defendant Daniel Oliver, was a Corrections Officer at Taconic Correctional Facility, who violated plaintiff's as described rights herein.

8.      Defendant Anthony J. Annucci is the Acting Commissioner of DOCCS. He is responsible for the care, custody, and control of all inmates housed in DOCCS facilities. He is the chief executive officer of DOCCS, and is responsible, consistent with the legal mandates governing DOCCS, for the management and control of all state prisons, and for all matters relating to the placement, supervision, promotion, and discipline of the uniformed staff of the prisons where women prisoners are confined. He is responsible, along with other Defendants, for the system of complaint, investigations, and discipline of staff misconduct, including sexual harassment and abuse, and for setting the standards by which such complaints are reviewed to determine the actions, if any, to be taken against staff. He is responsible for the policies and practices that have resulted in the deprivation of Plaintiffs' rights under federal law, and he has failed to take necessary and appropriate actions to prevent such deprivations. He violated plaintiff's rights as described herein.

9.     Defendant Steven Maher is Chief of Investigations for the DOCCS Office of Special Investigations ("OSI," previously known as the Office of the Inspector General or "IG"). He is responsible for the investigation of complaints of criminal misconduct or violations of Departmental rules by DOCCS employees, including complaints of sexual harassment and abuse; for determining the standards by which such complaints are assessed; for reviewing all investigations of such complaints; for determining whether such complaints are substantiated; and for recommending whether or not responsive action be taken, including referrals to the Bureau of Labor Relations ("BLR") for disciplinary action against staff and referrals of allegations of criminal misconduct to law enforcement officials.  He violated plaintiff's rights as described herein.

10.     Defendant Christian Nunez is the Deputy Chief of Investigations for the Sex Crimes Unit ("SCU") of the OSI. He is responsible for the investigation of complaints of criminal or Departmental misconduct by DOCCS employees, including complaints of sexual harassment and abuse; for determining the standards by which such complaints are assessed; for reviewing all investigations of such complaints; for determining whether such complaints are substantiated; and for recommending whether or not responsive action should be taken, including referrals to the BLR for disciplinary action against staff and referrals of

4

allegations of criminal misconduct to law enforcement officials.
He violated plaintiff's rights as described herein.

   11.   Defendant Jason Effman is Associate Commissioner
of DOCCS' Sexual Abuse Prevention & Education Office. He is
responsible for gathering information on the extent of staff
sexual abuse within DOCCS prisons, is notified of each
allegation of sexual abuse within DOCCS' facilities, and
develops and implements policies to combat sexual abuse within
DOCCS' prisons, including those regarding supervision,
investigation and discipline of staff. He is a member of the
DOCCS Executive team dedicated to preventing and responding to
incidents of sexual abuse. He is sued in his official capacity
for prospective injunctive and declaratory relief for the
failure to protect women prisoners from sexual harassment and
abuse and, together with the other DOCCS Defendants.  He
violated plaintiff's rights as described herein.

   12.   Defendant John Shipley is Director of DOCCS' BLR.
He is responsible for deciding whether and on what terms to
pursue disciplinary actions against Departmental staff who are
alleged to have violated Departmental rules and regulations,
including violations consisting of the commission of sexual
misconduct. He is responsible for determining the type, scope
and manner concerning how evidence will be offered by the
Department at disciplinary hearings of staff. He violated
plaintiff's rights as described herein.

13.     John/Jane Does # 1-5, were NYS Correctional Officers or NYS employees who were assigned to Taconic Correctional Facility who violated plaintiff's rights as described herein.

14.     The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

15.     On or about June 26, 27, 28, 2015, at the Taconic Correctional Facility, 250 Harris Road, Bedford Hills, New York the defendants at times acting in concert and at times acting independently, committed the following illegal acts against the plaintiff.

16.     On or about June 26, 2015 plaintiff was an inmate at the Taconic Correctional Facility.

17.     Defendant Daniel Oliver found plaintiff smoking a cigarette in the bathroom.

18.     Defendant Daniel Oliver told plaintiff that she could avoid punishment, and that another inmate would advise her what to do.

19.     The other inmate told plaintiff that plaintiff could just ask defendant Daniel Oliver to smoke a cigarette and that he would allow her to smoke cigarettes behind the officer's desk.

20.   On June 27, 2015, during the midnight shift, plaintiff, and the female inmate went to ask Defendant Daniel Oliver to smoke a cigarette.

21.   Defendant Daniel Oliver told plaintiff and the other inmate they could smoke a cigarette.

22.   Defendant Daniel Oliver told plaintiff if this ever gets out, it is going to be my word against yours; or words to that effect.

23.   The other inmate told plaintiff to do whatever he says because he could make your life a living hell, or words to that effect.

24.   Defendant Daniel Oliver sexually assaulted plaintiff, he forced plaintiff to give him oral sex.

25.   Defendant Daniel Oliver, ejaculated in plaintiff's mouth.

26.   Plaintiff was going to spit out the semen, and before she could, Defendant Daniel Oliver gave her a water bottle filled with alcohol and told her to rinse and gargle.

27.   Defendant Daniel Oliver gave plaintiff marijuana.

28.   On June 28, 2015, plaintiff went back to smoke a cigarette.  This time plaintiff asked if Defendant had a condom, and he refused to use a condom.

29.   Defendant Daniel Oliver, sexually assaulted plaintiff, he forced his penis in plaintiff's vagina.

30. Soon after the incident, plaintiff feared for her safety.

31. Plaintiff did not want to report the incident while at Taconic Correctional Facility because she feared retaliation.

32. In order to get moved from the facility, she committed an infraction so she could placed on "keeplock" and eventually get moved from the facility.

33. On or about July 11, 2015, while plaintiff was on "keeplock", plaintiff reported the incident.

34. On or about August 6, 2015, plaintiff was transferred to Bedford Hills Correctional Facility.

35. While in Bedford Hills, investigators from the SCU came and interviewed plaintiff.

36. The interviewers told plaintiff that they were aware of prior incidents involving defendant Daniel Oliver.

37. The interviewers told plaintiff that they had placed hidden cameras in the area where plaintiff was sexually assaulted and that her sexual assaults were captured by cameras.

38. In December 2015, plaintiff was attacked by other inmates while in Bedford Hills Correctional Facility, upon information and belief, defendant Daniel Oliver arranged for plaintiff to be attacked.

39. On May 4, 2016, plaintiff Daniel Oliver was arrested, and accused of having inappropriate relationships with two female inmates.

40. Upon information and belief the aforesaid events are not an isolated incident. Defendants Anthony Annucci; Steven Maher; Christian Nunez; Jason Shipley; Jason Effman and John/Jane Does # 1-5 have had notice of the substantial risk of sexual abuse that women prisoners face in DOCCS custody through data, statistics and reports about the risks women prisoners face nationwide and, more specifically, through prior and present litigation against the State of New York involving sexual abuse allegations and the ongoing influx of reported instances of sexual assault, sexual abuse, and sexual harassment by correctional staff in New York State women's prisons.

41. Despite knowing the substantial risk of serious harm from the persistent sexual abuse occurring under their policies and practices, Defendants have failed to take the reasonable steps necessary to reduce the substantial risk of sexual abuse faced by all women under their custody and control. Defendants have instead relied on a decades-old rule that is "zero tolerance" in name only, lacking the necessary implementation and enforcement of policies and procedures governing supervision, investigation, and discipline of staff that would actually deter and punish staff misconduct. This approach has created a prison culture that is, despite the

purported "zero tolerance" position of the Department, functionally indifferent to the risk of sexual abuse for women prisoners, allowing staff sexual abuse and harassment to persist and flourish. Defendants perpetuate the sexual abuse of women prisoners by creating a culture in which even if such abuse is reported, correction officers are so unlikely to be disciplined for misbehavior that they freely disregard policies governing such behavior. This culture allows so called "willing" or "consensual" sexual contact to flourish, despite the fact that state law, prison policy, and common sense make clear that women in custody are unable to consent in the coercive prison environment where officers have complete discretion and control over the treatment of prisoners under their supervision. Allowing purportedly "consensual" sexual activity between staff and prisoners to go unpunished sends the message that some level of staff sexual contact with inmates is expected and not worth addressing.

42.   Defendants Anthony Annucci; Steven Maher; Christian Nunez; Jason Shipley; Jason Effman and John/Jane Does # 1-5; failed to protect plaintiff from sexual harassment; failed to investigate, refer for discipline and failed to take necessary and appropriate action in response to complaints of sexual harassment and abuse of women prisoners by male correctional staff.

43.   Moreover, defendants Anthony Annucci; Steven Maher; Christian Nunez; Jason Shipley; Jason Effman and John/Jane Does # 1-5, was aware prior to the incident that Daniel Oliver, lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as officers.  Despite such notice, Anthony Annucci; Steven Maher; Christian Nunez; Jason Shipley; Jason Effman and John/Jane Does # 1-5, retained Daniel Oliver, and failed to adequately train and supervise him.

44.   Moreover, at all times defendants Anthony Annucci; Steven Maher; Christian Nunez; Jason Shipley; Jason Effman and John/Jane Does # 1-5, and or agents and employees, negligently, carelessly, and recklessly, supervised, controlled, managed, maintained, inspected, and trained Daniel Oliver.

45.   At all times D Defendants Anthony Annucci; Steven Maher; Christian Nunez; Jason Shipley; Jason Effman and John/Jane Does # 1-5, and or agents and employees, caused, permitted, and allowed Daniel Oliver to act in an illegal, unprofessional, and/or deliberate manner in carrying out his official duties and/or responsibilities.

46.   At all times defendants Anthony Annucci; Steven Maher; Christian Nunez; Jason Shipley; Jason Effman and John/Jane Does # 1-5, and or agents and employees, negligently, carelessly, and recklessly retained in its employ, Daniel Oliver, who was clearly unfit for their positions, who acted in

an illegal, unprofessional, and/or deliberate manner in carrying out his official duties and/or responsibilities.

47.    The occurrence(s) and injuries sustained by plaintiff, were caused solely by, and as a result of the negligent, malicious, reckless, and/or intentional conduct of the defendants as set forth above, without provocation on the part of the plaintiff contributing thereto, specifically, the reckless manner in which defendants Anthony Annucci; Steven Maher; Christian Nunez; Jason Shipley; Jason Effman and John/Jane Does # 1-5, hired, trained, supervised, controlled, managed, maintained, inspected, and retained Daniel Oliver.

48.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

49.    The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

50.    As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

## FIRST CLAIM

### (ASSAULT)

51.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

52.   Among other things as described above, the sexual assault of plaintiff placed her in fear of imminent harmful and offensive physical contacts.

53.   Accordingly, defendants are liable to plaintiff under New York State law for assault.

## SECOND CLAIM

### (BATTERY)

54.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

55.   Among other things as described above, defendants' failure to protect and sexual assault of plaintiff were illegal physical contacts.

56.   Accordingly, defendants are liable to plaintiff under New York State law for battery.

## THIRD CLAIM

### (NEGLIGENT SUPERVISION, HIRING, SUPERVISION, MONITORING, TRAINING AND RETENTION OF UNFIT EMPLOYEES)

57.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

58.   Defendants are liable to the plaintiff because the occurrence and injuries sustained by plaintiff, were caused solely by, and as a result of the malicious, reckless,

negligent, and/or intentional conduct of defendants its agents, servants and/or employees, as set forth above, without provocation on the part of plaintiff contributing thereto, specifically, the negligent and reckless manner, in which said defendant hired, trained, supervised, controlled, managed, maintained, inspected, and retained its employees officers.

## FOURTH CLAIM

### (INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

59.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

60.   That by virtue of the occurrence and defendants, individually and/or by their agents, servants and/or employees, negligently and/or intentionally inflicted emotional harm upon plaintiff.

61.   The defendants' actions against plaintiff were extreme and outrageous and caused plaintiff severe emotional distress.

62.   The defendants breached a duty owed to the plaintiff that either unreasonably endangered plaintiff's physical safety, or caused the plaintiff to fear for his own safety.

## FIFTH CLAIM

### (NEGLIGENCE)

63.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

64.    Defendants are liable to plaintiff because defendants owed plaintiff a cognizable duty of care as a matter of law, and breached that duty.

## SIXTH CLAIM

### FAILURE TO INTERVENE

65.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

66.    Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

67.    Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

## SEVENTH CLAIM

### (DELIBERATE INDIFFERENCE TO SAFETY, FAILURE TO PROTECT)

68.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

69.    The defendants exercised deliberate indifference and cruelty, extreme recklessness, and intent to a known and probable risk to plaintiff by failing to take remedial action, and allowing a dangerous environment to become so pervasive at Taconic Correctional Facility by allowing sexual assault, sexual abuse, and sexual harassment by correctional staff.

70.    The aforesaid conduct by the defendants violated plaintiff's rights under 42 U.S.C. §§ 1983 and the Fifth,

Eighth, and Fourteenth Amendments to the United States Constitution.

## EIGHTH CLAIM

### (CRUEL AND UNUSUAL PUNISHMENT)

71.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

72.    The defendants exercised cruel and unusual punishment by sexually assaulting plaintiff, and allowing her to be sexually assaulted.

73.    The aforesaid conduct by the defendants violated plaintiff's rights under 42 U.S.C. §§ 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

## NINTH CLAIM

### (RETALIATION)

74.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

75.    Plaintiff exercised free speech during the incident by, among other things, reporting her sexual assault.

76.    Plaintiff's use of free speech was a motivating factor in the defendant Daniel Oliver causing plaintiff to be assaulted by other inmates at Bedford Hills Correctional Facility.

77.    Accordingly, Defendant Daniel Oliver is liable to plaintiff under the First Amendment to the United States Constitution.

## TENTH CLAIM

### (FAILURE TO IMPLEMENT POLICIES TO AVOID CONSTITUTIONAL DEPRIVATIONS)

78.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

79.    Despite known risks and incidents of sexual misconduct by staff, Defendants, through their policies and practices (or lack thereof) have recklessly disregarded these risks, and have failed to protect plaintiff and the women prisoners in their custody from harm.

80.    Defendants inadequately supervise corrections staff, placing plaintiff and women prisoners at a heightened risk of sexual abuse.

81.    Defendants have failed to enact appropriate rules and policies concerning the behavior of male staff and fail to enforce existing rules and policies governing staff behavior

82.    Despite knowledge of the risk of sexual abuse in women's prisons, Defendants assign male staff to posts on which they have ample opportunity for unmonitored contact with women prisoners.

83.    Defendants have failed to enact adequate rules and policies to monitor and discipline staff engaged in behavior that constitutes warning signs of sexual abuse, such as spending a disproportionate amount of time talking to a particular prisoner, repeatedly requesting a particular prisoner for a

17

particular assignment, discussing their personal life with a
prisoner, or asking a prisoner personal questions.  Staff are
not disciplined or informally counseled when supervisors witness
behavior that is indicative of warning signs of sexual abuse.

84.   Defendants have failed to enact adequate rules
and policies to protect women prisoners from sexual innuendoes,
degrading sexual comments, and propositioning, and to enforce
those rules and policies that do exist.

85.   Defendants have failed to enact appropriate rules
and policies concerning the behavior of male staff posted to
housing units in order to protect the privacy of women prisoners
and to protect them from harassment. Defendants also fail to
enforce those rules and policies that do exist. For example,
DOCCS policy requires male staff to announce their presence only
the first time that they enter a living area, allowing male
officers to re-enter living quarters and bathroom areas
unannounced, and to watch women dress and undress. Male staff
are not disciplined or reprimanded for such conduct.

86.   Defendants have failed to take sufficient action
when officers leave their assigned posts, allow inmates into
areas where inmates are not permitted, ask women to volunteer or
work on jobs to which they have not been formally assigned, and
engage in open and obvious behavior that is clearly suggestive
of inappropriate relationships.

87.    Defendants permit officers virtually unfettered access to private, unmonitored areas such as bathrooms, kitchen store rooms, storage closets, slop sink areas, basements, classrooms, laundry areas, and private areas of prison yards. At the same time, Defendants fail to prohibit officers from being alone with women prisoners in such areas where sexual abuse of women prisoners is easily accomplished. When instances of staff sexual misconduct have been substantiated, they are often found to have occurred in these isolated, and largely unmonitored, areas.

88.    Defendants fail to require and conduct reasonable searches of correctional staff upon entry to correctional facilities that could help prevent or discourage sexual abuse or ultimately assist in the investigation of allegations of staff sexual misconduct. The failure to catch correctional staff with contraband such as drugs and alcohol, or to limit entry of condoms, cell phones, notes, and other personal items allows officers the opportunity to use these items to influence, coerce, or otherwise manipulate prisoners into performing sexual acts and limits the evidence that could be used in investigations of staff sexual misconduct.

89.    The aforesaid conduct by the defendants violated plaintiff's rights under 42 U.S.C. §§ 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE,** plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.   Compensatory damages in an amount to be determined by a jury;

b.   Punitive damages in an amount to be determined by a jury;

c.   Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.   Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:   New York, New York
         June 26, 2016

ADAMS & COMMISSIONG LLP.
*Attorneys for Plaintiff*
65 Broadway Suite 715
New York, NY 10006-2503
(212) 430-6590
martin@amcmlaw.com

_____
MARTIN E. ADAMS, ESQ